**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN MORRIS; KELLY MCDANIEL, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellants*, | No. 13-16599 |
| | D.C. No. 5:12-cv-04964-RMW |
| v. | OPINION |
| ERNST & YOUNG, LLP; ERNST & YOUNG U.S., LLP, *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted November 17, 2015
San Francisco, California

Filed August 22, 2016

Before: Sidney R. Thomas, Chief Judge and Sandra S.
Ikuta and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Thomas;
Dissent by Judge Ikuta

## SUMMARY*

### Labor Law

The panel vacated the district court's order compelling individual arbitration in an employees' class action alleging that Ernst & Young misclassified employees to deny overtime wages in violation of the Fair Labor Standards Act and California labor laws.

As a condition of employment, the employees were required to sign agreements that contained a "concerted action waiver" requiring the employees to pursue legal claims against Ernst & Young exclusively through arbitration, and arbitrate only as individuals and in "separate proceedings."

The panel held that an employer violates § 7 and § 8 of the National Labor Relations Act by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms of conditions of employment. The panel held that Ernst & Young interfered with the employees' right to engage in concerted activity under the National Labor Relations Act by requiring the employees to resolve all of their legal claims in "separate proceedings." The panel concluded that the "separate proceedings" terms in the Ernst & Young contracts could not be enforced.

The panel held that the Federal Arbitration Act did not dictate a contrary result. The panel held that when an

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

arbitration contract professes to waive a substantive federal right, the savings clause of the Federal Arbitration Act prevents the enforcement of that waiver.

The panel vacated the order, and remanded to the district court to determine whether the "separate proceedings" clause was severable from the contract. The panel held that it need not reach plaintiff's alternative arguments regarding the Norris LaGuardia Act, the Fair Labor Standards Act, or whether Ernst & Young waived its right to arbitration.

Judge Ikuta dissented because she believed that the majority's opinion violated the Federal Arbitration Act's command to enforce arbitration agreements according to their terms, was directly contrary to Supreme Court precedent, and was on the wrong side of a circuit split. Judge Ikuta concluded that § 7 of the National Labor Relations Act did not prevent the collective action waiver at issue here, and would hold that the employee's contract must be enforced according to its terms.

---

## COUNSEL

Max Folkenflik (argued), Folkenflik & McGerity, New York, New York; H. Tim Hoffman, H. Tim Hoffman Law, Oakland, California; Ross L. Libenson, Libenson Law, Oakland, California; for Plaintiffs-Appellants.

Rex S. Heinke (argued) and Gregory W. Knopp, Akin Gump Strauss Hauer & Feld, Los Angeles, California; Daniel L. Nash, Akin Gump Strauss Hauer & Feld, Washington, D.C.; for Defendants-Appellees.

Richard F. Griffin, Jr., General Counsel; Jennifer Abruzzo, Deputy General Counsel; John H. Ferguson, Associate General Counsel; Linda Dreeben, Nancy E. Kessler Platt and Meredith L. Jason, Deputy Assistant General Counsel; Kira Dellinger Vol, Supervisory Attorney; Paul L. Thomas, Attorney; National Labor Relations Board, Washington, D.C.; for Amicus Curiae National Labor Relations Board.

## OPINION

THOMAS, Chief Judge:

In this case, we consider whether an employer violates the National Labor Relations Act by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment. We conclude that it does, and vacate the order of the district court compelling individual arbitration.

I

Stephen Morris and Kelly McDaniel worked for the accounting firm Ernst & Young. As a condition of employment, Morris and McDaniel were required to sign agreements not to join with other employees in bringing legal claims against the company. This "concerted action waiver" required employees to (1) pursue legal claims against Ernst & Young exclusively through arbitration and (2) arbitrate only as individuals and in "separate proceedings." The effect of the two provisions is that employees could not initiate concerted legal claims against the company in any forum—in court, in arbitration proceedings, or elsewhere.

Nonetheless, Morris brought a class and collective action against Ernst & Young in federal court in New York, which McDaniel later joined. According to the complaint, Ernst & Young misclassified Morris and similarly situated employees. Morris alleged that the firm relied on the misclassification to deny overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 201 *et seq*., and California labor laws.

The case was eventually transferred to the Northern District of California. There, Ernst & Young moved to compel arbitration pursuant to the agreements signed by Morris and McDaniel. The court ordered individual arbitration and dismissed the case. This timely appeal followed.

Morris and McDaniel argue that their agreements with the company violate federal labor laws and cannot be enforced. They claim that the "separate proceedings" clause contravenes three federal statutes: the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et. seq*., the Norris LaGuardia Act, 29 U.S.C. § 101 *et seq*., and the FLSA. Relevant here, Morris and McDaniel rely on a determination by the National Labor Relations Board ("NLRB" or "Board") that concerted action waivers violate the NLRA. *D.R. Horton*, 357 NLRB No. 184 (2012) ("*Horton I*"), *enf. denied* 737 F.3d 344 (5th Cir. 2013) ("*Horton II*"); *see also Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014) ("*Murphy Oil I*"), *enf. denied* 808 F.3d 1013 (5th Cir. 2015) ("*Murphy Oil II*").

We have jurisdiction under 28 U.S.C. § 1331 and review the district court's order to compel arbitration *de novo*. *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009).

II

This case turns on a well-established principle: employees have the right to pursue work-related legal claims together. 29 U.S.C. § 157; *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978). Concerted activity—the right of employees to act *together*—is the essential, substantive right established by the NLRA. 29 U.S.C. § 157. Ernst & Young interfered with that right by requiring its employees to resolve all of their legal claims in "separate proceedings." Accordingly, the concerted action waiver violates the NLRA and cannot be enforced.

A

The Supreme Court has "often reaffirmed that the task of defining the scope of [NLRA rights] 'is for the Board to perform in the first instance as it considers the wide variety of cases that come before it.'" *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 829 (1984) (quoting *Eastex*, 437 U.S. at 568). "[C]onsiderable deference" thus attaches to the Board's interpretations of the NLRA. *Id.* Thus, we begin our analysis with the Board's treatment of similar contract terms.

The Board has concluded that an employer violates the NLRA

> when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other

working conditions against the employer in
any forum, arbitral or judicial.

*Horton I*, 357 NLRB No. 184, slip op. at 1.

The Board's determination rested on two precepts. First, the Board interpreted the NLRA's statutory right "to engage in . . . concerted activities for the purpose of . . . mutual aid or protection" to include a right "to join together to pursue workplace grievances, including through litigation." *Id.* at 2 (interpreting 29 U.S.C. § 157). Second, the Board held that an employer may not circumvent the right to concerted legal activity by requiring that employees resolve all employment disputes individually. *Id.* at 4–5, 13 (interpreting 29 U.S.C. § 158). In other words, employees must be able to initiate a work-related legal claim together in some forum, whether in court, in arbitration, or somewhere else. *Id.* A concerted action waiver prevents this: employees may only resolve disputes in a single forum—here, arbitration—and they may never do so in concert. *Id.*[1]

The Supreme Court has instructed us to review the Board's interpretations of the NLRA under the familiar two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 & n.9 (1984). *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992) (*Chevron* framework applies to NLRB constructions of the

---

[1] The contract in *Horton I* required all claims to be heard in arbitration and required the arbitrator to "hear only Employee's individual claims." *Horton I*, 357 NLRB No. 184, slip op. at 1. It also contained an express waiver of class or collective proceedings in arbitration. *Id.* Ernst & Young concedes that the "separate proceedings" term in the exclusive arbitration agreements here has the same effect.

NLRA). The Board's reasonable interpretations of the NLRA command deference, while the Board's remedial preferences and interpretations of unrelated statutes do not. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143–44 (2002).**[2]**

Under *Chevron*, we first look to see "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In analyzing Congressional intent, we employ the "traditional tools of statutory construction." *Id.* at 843 & n. 9. We not only look at the precise statutory section in question, but we also analyze the provision in the context of the governing statute as a whole, presuming congressional intent to create a "'symmetrical and coherent regulatory scheme.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). If we conclude that "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

In this case, we need go no further. The intent of Congress is clear from the statute and is consistent with the Board's interpretation.

---

**[2]** The Board has both rulemaking and adjudicative powers, 29 U.S.C. § 156, § 160, and it may authoritatively interpret the NLRA through either process. *NLRB v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 294 (1974) (concluding that the Board may announce "new principles in an adjudicative proceeding"). Our analysis under *Chevron* does not extend to the Board's interpretation of statutes it does not administer, to the Board's interpretation of Supreme Court cases, or to the Board's remedial preferences.

To determine whether the NLRA permits a total waiver on concerted legal activity by employees, we begin with the words of the statute.  The NLRA establishes the rights of employees in § 7.  It provides that:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection

29 U.S.C. § 157.

Section 8 enforces these rights by making it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]."  29 U.S.C. § 158; *see NLRB v. Bighorn Beverage*, 614 F.2d 1238, 1241 (9th Cir. 1980) (describing relationship between sections; § 7 establishes rights and § 8 enforces them).

Section 7 protects a range of concerted employee activity, including the right to "seek to improve working conditions through resort to administrative and judicial forums." *Eastex*, 437 U.S. at 566; *see also City Disposal Sys.*, 465 U.S. at 835 ("There is no indication that Congress intended to limit [§ 7] protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way.").  Therefore, "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act." *Brady v. NFL*, 644 F.3d

661, 673 (8th Cir. 2011). So too is the "filing by employees of a labor related civil action." *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir. 1976). Courts regularly protect employees' right to pursue concerted work-related legal claims under § 7. *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1189 (D.C. Cir. 2000) ("filing a civil action by a group of employees is protected activity" under § 7) (internal quotation marks and citation omitted); *Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) (same).

It is also well-established that the NLRA establishes the right of employees to act in *concert*: "Employees shall have the right . . . to engage in other *concerted* activities for the purpose of *collective* bargaining or other *mutual* aid and protection." 29 U.S.C. § 157 (emphasis added). Concerted action is the basic tenet of federal labor policy, and has formed the core of every significant federal labor statute leading up to the NLRA. *City Disposal Sys.*, 465 U.S. at 834–35 (describing history of the term "concert" in statutes affecting federal labor policy). Taken together, these two features of the NLRA establish the right of employees to pursue work-related legal claims, and to do so together. The pursuit of a concerted work-related legal claim "clearly falls within the literal wording of § 7 that '[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.'" *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975) (quoting 29 U.S.C. § 157). The intent of Congress in § 7 is clear and comports with the Board's interpretation of the statute.[3]

---

[3] *Eastex* clarifies that concerted activity extends to judicial forums, and it does not limit concerted activity to any particular vehicle or mechanism. 437 U.S. at 556 & n.15. Further, we reject the argument that the NLRA cannot protect a right to concerted legal action because Rule 23 class

The same is true for the Board's interpretation of § 8's enforcement provisions. Section 8 establishes that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158. A "separate proceedings" clause does just that: it prevents the initiation of any concerted work-related legal claim, in any forum. Preventing the exercise of a § 7 right strikes us as "interference" within the meaning of § 8. Thus, the Board's determination that a concerted action waiver violates § 8 is no surprise. And an employer violates § 8 a second time by conditioning employment on signing a concerted action waiver. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 364 (1940) ("Obviously employers cannot set at naught the National Labor Relations Act by inducing their workmen to agree" to waive the statute's substantive protections); *see Retlaw Broad. Co.*, 310 NLRB no. 160, slip op. at 14 (1993), *enforced*, 53 F.3d 1002 (9th Cir. 1995) (section 8 prohibits conditioning employment on waiver of § 7 right).[4] Again, we need not proceed to the second step of *Chevron* because the intent of Congress in § 8 is clear and matches the Board's interpretation.

---

actions did not exist until after the NLRA was passed. *See City Disposal Sys.*, 465 U.S. at 835 (noting that the NLRA has forward-looking view of § 7 protections). Rule 23 is not the source of employee rights; the NLRA is. *Eastex* settles this question by expressly including concerted legal activity within the set of protected § 7 activities. 437 U.S. at 566.

[4] In contrast, there was no § 8 violation in *Johnmohammadi v. Bloomingdale's, Inc.* because the employee there could have opted out of the individual dispute resolution agreement and chose not to. 755 F.3d 1072, 1076 (9th Cir. 2014).

Section 8 has long been held to prevent employers from circumventing the NLRA's protection for *concerted* activity by requiring employees to agree to *individual* activity in its place. *National Licorice*, for example, involved a contract clause that discouraged workers from redressing grievances with the employer "in any way except personally." 309 U.S. at 360. This clause violated the NLRA. *Id.* at 361. The individual dispute resolution practice envisioned by the contract, and required by the employer, represented "a continuing means of thwarting the policy of the Act." *Id.*

Similarly, *J.H. Stone & Sons*, 125 F.2d 752 (7th Cir. 1942), concluded that individual dispute resolution requirements nullify the right to concerted activity established by § 7:

> By the clause in dispute, the employee bound himself to negotiate any differences with the employer and to submit such differences to arbitration. The result of this arbitration was final. Thus the employee was obligated to bargain individually and, in case of failure, was bound by the result of arbitration. This is the very antithesis of collective bargaining.

*Id.* at 756.

The "separate proceedings" clause in this case is no different. Under the clause, the employee is obligated to pursue work-related claims individually and, no matter the outcome, is bound by the result. This restriction is the "very antithesis" of § 7's substantive right to pursue concerted work-related legal claims. For the same reason, the Seventh Circuit recently concluded that "[a] contract that limits

Section 7 rights that is agreed to as a condition of continued employment qualifies as 'interfer[ing] with' or 'restrain[ing] . . . employees in the exercise' of those rights in violation of Section 8(a)(1)." *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1155 (7th Cir. 2016). Indeed, § 7 rights would amount to very little if employers could simply require their waiver.

In sum, the Board's interpretation of § 7 and § 8 is correct. Section 7's "mutual aid or protection clause" includes the substantive right to collectively "seek to improve working conditions through resort to administrative and judicial forums." *Eastex*, 437 U.S. at 566; *accord City Disposal Sys.*, 465 U.S. at 834–35. Under § 8, an employer may not defeat the right by requiring employees to pursue all work-related legal claims individually. *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("Individual contracts . . . may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act"). The NLRA is unambiguous, and there is no need to proceed to the second step of *Chevron*.[5]

Applied to the Ernst & Young contract, § 7 and § 8 make the terms of the concerted action waiver unenforceable. The "separate proceedings" clause prevents concerted activity by employees in arbitration proceedings, and the requirement that employees only use arbitration prevents the initiation of concerted legal action anywhere else. The result: interference

---

[5] Because congressional intent can be ascertained employing the usual tools of statutory construction, we do not proceed to step two of the *Chevron* analysis. However, if that analysis were undertaken, the only conclusion could be that "[t]he Board's holding is a permissible construction of 'concerted activities for . . . mutual aid or protection' by the agency charged by Congress with enforcement of the Act." *Weingarten*, 420 U.S. at 260 (quoting 29 U.S.C. § 157).

with a protected § 7 right in violation of § 8.  Thus, the "separate proceedings" terms in the Ernst & Young contracts cannot be enforced.[6]

## B

The Federal Arbitration Act ("FAA") does not dictate a contrary result.  The "separate proceedings" provision in this case appears in an agreement that directs employment-related disputes to arbitration.  But the arbitration requirement is not the problem.  The same provision in a contract that required court adjudication as the exclusive remedy would equally violate the NLRA.  The NLRA obstacle is a ban on initiating, in any forum, concerted legal claims—not a ban on arbitration.

The FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  In relevant part, it provides that,

> A written provision in any maritime transaction or a contract evidencing a

---

[6] Ernst & Young also argues for the first time on appeal that there is no evidence that Morris and McDaniel are statutory employees covered by the NLRA.  This argument was not adequately raised before the district court and is therefore waived.  *See Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009).  Likewise, we also reject the claim that the Board's interpretations of the NLRA in *Horton I* and *Murphy Oil I* do not apply here because there was no NLRB proceeding or finding of an unfair labor practice.  We agree with the agency's interpretation of the NLRA because it gives effect to Congress's intent.  Our agreement has nothing to do with the procedural history of the cases from which the Board's interpretation arose.

transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The Act requires courts to "place arbitration contracts 'on equal footing with all other contracts,'" *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)), and to "enforce them according to their terms," *Concepcion*, 563 U.S. at 339.  Not all contract terms receive blanket enforcement under the FAA, however.  The FAA's

saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

*Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Accordingly, when a party raises a defense to the enforcement of an arbitration provision, a court must determine whether the defense targets arbitration contracts without "due regard . . . to the federal policy favoring arbitration." *DIRECTV*, 136 S. Ct. at 471 (quoting *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

The contract defense in this case does not "derive [its] meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. An agreement to arbitrate work-related disputes does not conflict with the NLRA. Indeed, federal labor policy favors and promotes arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960).

The illegality of the "separate proceedings" term here has nothing to do with arbitration as a forum. It would equally violate the NLRA for Ernst & Young to require its employees to sign a contract requiring the resolution of all work-related disputes *in court* and in "separate proceedings." The same infirmity would exist if the contract required disputes to be resolved through casting lots, coin toss, duel, trial by ordeal, or any other dispute resolution mechanism, if the contract (1) limited resolution to that mechanism and (2) required separate individual proceedings. The problem with the contract at issue is not that it requires arbitration; it is that the contract term defeats a substantive federal right to pursue concerted work-related legal claims.[7]

When an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense

---

[7] In contrast, the arbitration cases cited by the dissent and Ernst & Young involved litigants seeking to avoid an arbitral forum—their defenses targeted arbitration. Here, Morris and McDaniel seek to exercise substantive rights guaranteed by federal statute in *some* forum, including in arbitration.

of illegality.**[8]**  9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339. The term may be excised, or the district court may decline enforcement of the contract altogether.  *See* 19 Richard Lord, 8 *Williston on Contracts* § 19:70 (4th ed. 1990) ("Illegal portions of a contractual agreement may be severed if the illegal provision is not central to the parties' agreement."); *see also Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 433 (9th Cir. 2015) ("'generally applicable' contract defense" is "preserved by § 2's saving clause").

Crucial to today's result is the distinction between "substantive" rights and "procedural" rights in federal law. The Supreme Court has often described rights that are the essential, operative protections of a statute as "substantive" rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  In contrast, procedural rights are the ancillary, remedial tools that help secure the substantive right. *See id.; CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 671 (2012) (describing difference between statute's "guarantee" and provisions contemplating ways to enforce the core guarantee).**[9]**

---

**[8]** *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), is not to the contrary.  Under *Stolt*, an arbitrator may not add to the terms of an arbitration agreement, and therefore may not order class arbitration unless the contract provides for it  *Id.* at 684.  This does not require a court to enforce an illegal term.  Nor would *Stolt* prevent the district court, on remand, from severing the "separate proceedings" clause to bring the arbitration provision into compliance with the NLRA.

**[9]** The Age Discrimination in Employment Act ("ADEA"), for example, establishes a primary, substantive right against age discrimination. 29 U.S.C. § 623; *Gilmer*, 500 U.S. at 27.  It provides for collective proceedings as one way, among many, to secure that right.  29 U.S.C.

The difference is key, because substantive rights cannot be waived in arbitration agreements. This tenet is a fundamental component of the Supreme Court's arbitration jurisprudence: "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628. Thus, if a contract term in an arbitration agreement "operate[s] . . . as a prospective waiver of a party's right to pursue statutory remedies for [substantive rights], we would have little hesitation in condemning the agreement." *Id.* at 637 n.19; *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013); *Green Tree Fin. Corp.-Al. v. Randolph*, 531 U.S. 79, 90 (2000); *Gilmer*, 500 U.S. at 28; *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987).

The FAA does not mandate the enforcement of contract terms that waive substantive federal rights. Thus, when an arbitration contract professes the waiver of a substantive federal right, the FAA's saving clause prevents a conflict between the statutes by causing the FAA's enforcement mandate to yield. *See Epic Sys.*, 823 F.3d at 1159 ("Because the NLRA renders [the defendant's] arbitration provision illegal, the FAA does not mandate its enforcement.").[10]

---

§ 626 (providing for "Recordkeeping, investigation, and enforcement" of the ADEA, including collective legal redress).

[10] Contrary to the suggestions of the dissent, the Supreme Court has repeatedly endorsed the distinctive roles of substantive and procedural rights in its recent arbitration case law. As recently as *Italian Colors*, the Supreme Court has held that the key question for courts assessing a statutory rights claim arising from an arbitration agreement is whether the agreement "constitute[s] the elimination of the *right to pursue* that

The rights established in § 7 of the NLRA—including the right of employees to pursue legal claims together—are substantive. They are the central, fundamental protections of the Act, so the FAA does not mandate the enforcement of a contract that alleges their waiver. The text of the Act confirms the central role of § 7: that section establishes the "*Right* of employees as to organization." 29 U.S.C. § 157 (emphasis added). No other provision of the Act creates these sorts of rights. Without § 7, the Act's entire structure and policy flounder. For example, § 8 specifically refers to the "exercise of the rights guaranteed in section 157." 28 U.S.C. § 158; *Bighorn Beverage*, 614 F.2d at 1241 ("Section 8(a)(1) of the Act implements [§ 7's] guarantee").

The Act's other enforcement sections are similarly confused without the rights established in § 7. *See, e.g.*, 29 U.S.C.§ 160 (providing powers of the Board to prevent interference with rights in § 7). There is no doubt that Congress intended for § 7 and its right to "concerted activities" to be the "primary substantive provision" of the NLRA. *See Gilmer*, 500 U.S. at 24. For this reason, the right

---

remedy." 133 S. Ct. at 2311 (emphasis in original). Similarly, in *CompuCredit*, the Court distinguished the core, substantive "guarantee" of the Credit Repair Organizations Act ("CROA") from a provision that contemplated the possibility of a judicial forum for vindicating the core right. 132 S. Ct. at 671 (holding that contract "parties remain free to specify" their choice of judicial forum "so long as the *guarantee*" of the Act "is preserved." (emphasis in original)). Contract parties can agree on the procedural terms they like (such as resolving disputes in arbitration), but they may not agree to leave the substantive protections of federal law at the door.

to concerted employee activity cannot be waived in an arbitration agreement.[11]

The dissent ignores this fundamental component of the Supreme Court's arbitration jurisprudence and argues that we must first locate a "contrary congressional command" before preventing the enforcement of an invalid contract term. But as the Seventh Circuit put it, "this argument puts the cart before the horse." *Epic Sys.*, 823 F.3d at 1156. Rather, "[b]efore we rush to decide whether one statute eclipses another, we must stop to see if the two statutes conflict at all." *Id.* The saving clause in the FAA prevents the need for such a conflict.

The dissent and Ernst & Young insist that we must effectively ignore the saving clause and first search to see which of two statutes will "trump" the other. But this is not the way the Supreme Court has instructed us to approach statutory construction. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995) ("[W]hen two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citation omitted)). Nor is a hunt for statutory conflict the "single question" the Supreme Court has told us to ask when examining the FAA's interaction with other federal statutes. Dissent at 35–36. Indeed, if we first had to locate a conflict between the FAA and other statutes, the FAA's saving clause would serve no purpose, which cannot be the case. *TRW Inc. v. Andrews*, 534

---

[11] An individual can opt-out of a class action, or opt-in to a collective action, in federal court (both procedural mechanisms). This does not enable an employer to require the same individual to waive the substantive labor right to initiate concerted activities set forth in the NLRA.

U.S. 19, 31 (2001) ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (citation omitted)); *see Epic Sys.*, 823 F.3d at 1157 (holding that there is no inherent conflict between the FAA and the NLRA).[12] Instead, we join the Seventh Circuit in treating the interaction between the NLRA and the FAA in a very ordinary way: when an arbitration contract professes to waive a substantive federal right, the saving clause of the FAA prevents the enforcement of that waiver.[13]

Thus, the dissent's citations to cases involving the waiver of *procedural* rights are misplaced. *CompuCredit*, for example, was a choice-of-judicial-forum case that addressed the waiver of procedural rights. In the Supreme Court's words, the case concerned "whether claims under the [CROA] can proceed in an arbitrable forum." 132 S. Ct. at 673. In today's case, the issue is not whether any particular forum, including arbitration, is available but rather which substantive rights must be available within the chosen forum. And the Supreme Court has repeatedly held that the core, substantive "rights" created by federal law survive contract terms that purport their waiver. Such was the case in *CompuCredit*, where the Court concluded that the use of a judicial forum contemplated by the CROA could be waived

---

[12] Neither the text of the FAA nor the Supreme Court's arbitration cases support the dissent's theory that the FAA's saving clause functions differently when a federal, as opposed to state, statute renders a contract term susceptible to an illegality defense.

[13] Because we see no inherent conflict between the FAA and the NLRA, we make no holding on which statute would win in a fight, nor do we opine on the meaning of their respective dates of passage, re-passage, and amendment.

so long as "*the guarantee of the legal power to impose liability*—is preserved." 132 S. Ct. at 671 (emphasis in original). In other words, parties can choose their forums but they cannot contract away the basic guarantees of a federal statute.

*Gilmer* was also a judicial-choice-of-forum case that addressed the waiver of procedural rights. There the Supreme Court again distinguished between a waivable procedural right (to use a court for class claims rather than arbitration) and a nonwaivable substantive right (to be free from age discrimination). 500 U.S. at 27–29. Not surprisingly, the Court held that the procedural right to use class proceedings in federal court could be waived. *Id.* at 32.**[14]**

*Italian Colors*, as well, was a judicial forum case that endorsed the distinction between a statute's basic guarantee and the various ways litigants may go about vindicating it. The Court was careful to distinguish between the matters "involved in *proving* a statutory remedy" and whether an agreement "constitute[s] the elimination of the *right to pursue* that remedy." *Italian Colors*, 133 S. Ct. at 2311. The plaintiffs objected that it would be infeasible to pursue their antitrust claims against the defendant without the ability to form a class. The Court rejected this argument, noting that so long as the substantive federal right remains—there, the right to pursue antitrust claims in some forum—then the arbitration agreements would be enforced according to their terms. *Id.* at 2310–12.

---

**[14]** In fact, the arbitration procedures in *Gilmer* allowed for collective proceedings. *Id.* The plaintiff simply preferred court adjudication.

The dissent misreads these cases to require a conflict between the FAA and the substantive provisions of other federal statutes. But as the Supreme Court has repeatedly made clear, there is a limiting principle built into the FAA on what may be waived in arbitration: where substantive rights are at issue, the FAA's saving clause works in conjunction with the other statute to prevent conflict.

The interaction between the NLRA and the FAA makes this case distinct from other FAA enforcement challenges in at least three additional and important ways.

First, because a substantive federal right is waived by the contract here, it is accurate to characterize its terms as "illegal." The dissent objects that a term in an arbitration contract can only be "illegal" if Congress issues a contrary command specifically referencing arbitration. But then it proceeds to cite cases where no substantive federal rights were waived. In those cases, the conflict between contract terms and federal law was less direct. In *Italian Colors*, for example, the Court concluded that the antitrust laws establish no statutory right to pursue concerted claims: the acts "make no mention of class actions." *Id.* at 2309. In contrast, the federal statutory regime in this case does exactly the opposite. Where the antitrust laws are silent on the issue of concerted legal redress, the NLRA is unambiguous: concerted activity is the touchstone, and a ban on the pursuit of concerted work-related legal claims interferes with a core, substantive right.

Second, the enforcement defense in this case has nothing to do with the adequacy of arbitration proceedings. In *Concepcion* and *Italian Colors*, the Court held that arguments about the adequacy of arbitration necessarily yield to the policy of the FAA. *Concepcion*, 563 U.S. at 351; *Italian*

*Colors*, 133 S. Ct. at 2312. The Court "specifically rejected the argument that class arbitration [is] necessary to prosecute claims 'that might otherwise slip through the legal system.'" *Italian Colors*, 133 S. Ct. at 2312 (quoting *Concepcion*, 563 U.S. at 351). Here, the NLRA's prohibition on enforcing the "separate proceedings" clause has nothing to do with the adequacy of arbitration. The dissent and Ernst & Young attempt to read *Concepcion* for the proposition that concerted claims and arbitration are fundamentally inconsistent. But *Concepcion* makes no such holding. *Concepcion* involved a consumer arbitration contract, not a labor contract, and there was no federal statutory scheme that declared the contract terms illegal. 563 U.S. at 338. The defense in that case was based on a judge-made state law rule. In contrast, the illegality of the contract term here follows directly from the NLRA. Arbitration between groups of employees and their employers is commonplace in the labor context. It would no doubt surprise many employers to learn that individual proceedings are a "fundamental" attribute of workplace arbitration. *See also Gilmer*, 500 U.S. at 32 (noting that employer's arbitration "rules also provide for collective proceedings").[15]

Third, the enforcement defense in this case does not specially "disfavor" arbitration. The dissent makes dire predictions about the future of workplace arbitration if the

---

[15] The dissent suggests that employee-claimants could act in "concert" by simply hiring the same lawyers. This is not what the NLRA contemplates by the term "concert." An employer could not, for example, require its employees to sign a pledge not to join a union but remain in conformity with the NLRA by suggesting that employees hire similar attorneys to represent them in wage negotiations. *See also City Disposal Sys.*, 465 U.S. at 834–35 (discussing the term "concert" in federal labor law at the time of the NLRA's passage).

"separate proceedings" clause is invalidated. However, our holding is not that arbitration may not be used in workplace disputes. Quite the contrary. Rather, our holding is simply that when arbitration or any other mechanism is used exclusively, substantive federal rights continue to apply in those proceedings. The only role arbitration plays in today's case is that it happens to be the forum the Ernst & Young contract specifies as exclusive. The contract here would face the same NLRA troubles if Ernst & Young required its employees to use *only* courts, or *only* rolls of the dice or tarot cards, to resolve workplace disputes—so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum. At its heart, this is a labor law case, not an arbitration case.

Further, nothing in the Supreme Court's recent arbitration case law suggests that a party may simply incant the acronym "FAA" and receive protection for illegal contract terms anytime the party suggests it will enjoy arbitration less without those illegal terms. We have already held that *Concepcion* supports no such argument:

> The Supreme Court's holding that the FAA preempts state laws having a "disproportionate impact" on arbitration cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration. Our court has recently explained the nuance: "*Concepcion* outlaws discrimination in state policy that is *unfavorable* to arbitration."

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013) (quoting *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir.2013)).    Do not be misled. Arbitration is consistent with, and encouraged by, the NLRA following today's opinion.

At bottom, the distinguishing features of today's case are simple.   The NLRA establishes a core right to concerted activity.   Irrespective of the forum in which disputes are resolved, employees must be able to act in the forum *together*.    The structure of the Ernst & Young contract prevents that.  Arbitration, like any other forum for resolving disputes, cannot be structured so as to exclude all concerted employee legal claims.  As the Supreme Court has instructed, when "private contracts conflict with" the NLRA, "they obviously must yield or the Act would be reduced to a futility." *J.I. Case*, 321 U.S. at 337.[16]

### III

In sum, the "separate proceedings" provision of the Ernst & Young contract interferes with a substantive federal right protected by the NLRA's § 7.  The NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims.  An employer may not condition employment on the requirement that an employee sign such a contract.

---

[16] We recognize that our sister Circuits are divided on this question.  We agree with the Seventh Circuit, the only one that "has engaged substantively with the relevant arguments." *Epic Sys.*, 823 F.3d at 1159; *but see Murphy Oil II*, 808 F.3d at 1018 (enforcing employer's concerted action waiver under the FAA); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053–54 (8th Cir. 2013).

It is "well established . . . that a federal court has a duty to determine whether a contract violates the law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982). Because the district court's order compelling arbitration was based, at least in part, on the separate proceedings provision, we must vacate the order and remand to the district court to determine whether the "separate proceedings" clause is severable from the contract. We take no position on whether arbitration may ultimately be required in this case.

In addition, because the contract's conflict with the NLRA is determinative, we need not—and do not—reach plaintiff's alternative arguments regarding the Norris LaGuardia Act, the FLSA, or whether Ernst & Young waived its right to arbitration.[17]

**REVERSED AND REMANDED**.

---

IKUTA, Circuit Judge, dissenting:

Today the majority holds that § 7 of the National Labor Relations Act (NLRA) precludes employees from waiving the right to arbitrate their disputes collectively, thus striking at the heart of the Federal Arbitration Act's (FAA) command to enforce arbitration agreements according to their terms. This decision is breathtaking in its scope and in its error; it is

---

[17] Putative-amici labor scholars' motion for leave to file an *amicus* brief is denied. *See* Fed. R. App. P. 29(e). The motion for judicial notice of additional authorities is also denied. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 940 n.2 (9th Cir. 2011).

directly contrary to Supreme Court precedent and joins the wrong side of a circuit split.  I dissent.

I

The plaintiffs in this case, Stephen Morris and Kelly McDaniel, entered into an agreement with Ernst & Young that included a program for resolving covered disputes.  The parties agreed that the program was "the sole method for resolving disputes within its coverage."  Under the program, the parties agreed they would first try to resolve a covered dispute by mediation.  If that failed, either party could choose to proceed to binding arbitration.  The agreement set forth the applicable procedures.  Subparagraph K provided:

> Separate Proceedings.  If there is more than one Covered Dispute between the Firm and an Employee, all such Covered Disputes may be heard in a single proceeding.  Covered Disputes pertaining to different Employees will be heard in separate proceedings.

As the Supreme Court has explained, such a waiver of class actions is typical in the arbitration context because the class procedural mechanism "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  Among other problems, "there is little incentive for lawyers to arbitrate on behalf of individuals when they may do so for a class and reap far higher fees in the process."  *Id.* at 347.  Class mechanisms also eviscerate the principal benefits of arbitration — speed and informality, "mak[ing] the process slower, more costly, and more likely to generate procedural morass than final judgment."  *Id.* at 348.

Notwithstanding the agreement to arbitrate, Morris brought a complaint in federal district court alleging that Ernst & Young had violated the Fair Labor Standards Act (FLSA) and analogous state law by improperly classifying him and other employees as exempt employees who were not entitled to overtime wages. (McDaniel was later added as a plaintiff.) Morris purported to bring the action as a class action under Rule 23 of the Federal Rules of Civil Procedure and as a collective action under 29 U.S.C. § 216(b) of the FLSA.[1]  After some procedural complications not relevant here, Ernst & Young moved to compel arbitration under its agreement. Morris argued that the "Separate Proceedings" clause of his agreement violated § 7 of the NLRA. The district court rejected this argument. In reversing, the majority holds that employees may not be required to waive the use of a class action mechanism in arbitrating or litigating their claims. To the extent the Supreme Court has held that class actions are inconsistent with arbitration, *see Concepcion*, 563 U.S. at 344, the majority effectively cripples

---

[1] Section 216(b) provides a class action mechanism similar to that contemplated by Rule 23, although it requires voluntary opt in by the members of the class.  It states, in pertinent part:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

the ability of employers and employees to enter into binding agreements to arbitrate.

## II

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339. As the Supreme Court has repeatedly explained, the FAA was enacted to overcome "widespread judicial hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339. The Supreme Court's cases have "repeatedly described the Act as embod[ying] [a] national policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *Id.* at 346 (internal quotation marks and citations omitted). The FAA's national policy applies to the states, *see, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), and forecloses any state statute or common law rule that attempts "to undercut the enforceability of arbitration agreements," *id.* at 16, unless the savings clause in § 2 is applicable, *see Concepcion*, 563 U.S. at 344; *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Therefore, when a party claims that a state law prevents the enforcement of an arbitration agreement, the court must determine whether that law is preempted by the FAA or is rescued from preemption by the FAA's savings clause. *See Concepcion*, 563 U.S. at 339–42.

But when a party claims that a federal statute makes an arbitration agreement unenforceable, the Supreme Court takes a different approach. In determining whether the FAA's mandate requiring "courts to enforce agreements to arbitrate according to their terms" has been overridden by a different federal statute, the Supreme Court requires a showing that

such a federal statute includes an express "contrary congressional command." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (internal quotation marks omitted). The burden is on the party challenging the arbitration agreement to show that Congress expressly intended to preclude a waiver of the judicial forum. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "If such an intention exists, it will be discoverable in the text of the [federal act], its legislative history, or an 'inherent conflict' between arbitration and the [federal act's] underlying purposes." *Id.* "Throughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Contrary to the majority's focus on whether the NLRA confers "substantive rights," in every case considering a party's claim that a federal statute precludes enforcement of an arbitration agreement, the Supreme Court begins by considering whether the statute contains an express "contrary congressional command" that overrides the FAA. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013); *CompuCredit*, 132 S. Ct. at 669, *Gilmer*, 500 U.S. at 29.[2] To date, in every case in which the Supreme Court has conducted this analysis of federal statutes, it has harmonized the allegedly contrary statutory language with the FAA and allowed the arbitration agreement at issue to be

---

[2] The Supreme Court has applied the same approach, and reached the same conclusion, in upholding a collective bargaining agreement with a mandatory arbitration clause governed by the NLRA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265–74 (2009).

enforced according to its terms.[3]  Thus in *CompuCredit*, the Court considered a purported "contrary congressional command" in the Credit Repair Organization Act (CROA), 15 U.S.C. § 1679 et seq., which the plaintiffs claimed precluded consumers from entering an arbitration agreement that waived their right to litigate an action in a judicial forum. 132 S. Ct. at 669.  The plaintiffs pointed to the language in CROA that required a business to tell a consumer that "[y]ou have a right to sue," 15 U.S.C. § 1679c(a), that provided for actual and punitive damages in both individual legal actions and class actions, *id.* § 1679g, and that provided that "[a]ny waiver by any consumer of any protection provided by or any right of the consumer" was void and could "not be enforced by any Federal or State court," *id*. § 1679f(a).

The Supreme Court rejected this claim.  Overruling the Ninth Circuit, the Court held that had Congress meant to prohibit arbitration clauses, "it would have done so in a manner less obtuse than what respondents suggest." *CompuCredit*, 132 S. Ct. at 672.  According to the Court, when Congress wants to restrict the use of arbitration "it has done so with a clarity that far exceeds the claimed indications in the CROA."  *Id.*  The Supreme Court gave two examples of what would constitute a sufficiently clear "contrary congressional command":

---

[3] Only *Wilko v. Swan* held that the Securities Act of 1933 contained an unwaivable right to a judicial forum for claims under the Act, thereby precluding the enforcement of an arbitration agreement between parties to a sale of securities.  346 U.S. 427, 432–37 (1953).  But the Court expressly overruled *Wilko* in *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, rejecting its reasoning as "pervaded . . . by the old judicial hostility to arbitration."  490 U.S. 477, 480 (1989) (internal quotation marks omitted); *see also Pyett*, 556 U.S. at 266–67.

"No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." *Id.* (quoting 7 U.S.C. § 26(n)(2) (2006 ed., Supp. IV)).

"Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy." *Id.* (quoting 15 U.S.C. § 1226(a)(2) (2006 ed.)).

Because the language in the two CROA provisions cited by plaintiffs did not expressly state that a predispute arbitration agreement was unenforceable, the Court determined that they were consistent with enforcement of an arbitration agreement.  The "right to sue" language, for instance, merely allowed parties to enter into an agreement requiring initial arbitral adjudication, which then could be reviewed in a court of law.  *Id.* at 670–71.  Because the CROA was "silent on whether claims under the Act can proceed in an arbitrable forum," the Court held that "the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 673.

In *Gilmer*, plaintiffs claimed the Age Discrimination in Employment Act of 1967 (ADEA) contained a contrary congressional command to the FAA's mandate.  500 U.S. at 27–30.  Specifically, the plaintiffs pointed to language allowing employees to litigate in court as providing an unwaivable right to access a judicial forum:  "[a]ny person aggrieved may bring a civil action in any court of competent

jurisdiction for such legal or equitable relief as will effectuate the purpose of this chapter," 29 U.S.C. § 626(c)(1); *Gilmer*, 500 U.S. at 27. They also pointed to language they claimed precluded employees from waiving the right to bring a class action: "The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in section . . . 216," 29 U.S.C. § 626(b), where § 216(b) (also at issue here) states that an action under the FLSA may be brought in court "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," although the represented employees must consent. In other words, the plaintiffs argued that because the ADEA explicitly provided for a class mechanism, the statute precluded the enforcement of an arbitration agreement that included a class action waiver.

The Supreme Court rejected this argument. Once again, the statutory language was not sufficiently clear to prevent the enforcement of arbitration agreements that included a class action waiver. Looking closely at the text of the statute, the Court noted that while Congress allowed for judicial resolution of claims, it "did not explicitly preclude arbitration or other nonjudicial resolution of claims." *Gilmer*, 500 U.S. at 27–29. Moreover, "the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 32. Thus, the language on which the plaintiffs relied was entirely consistent with enforcing an arbitration agreement that precluded a class mechanism. *See also Italian Colors*, 133 S. Ct. at 2311 ("In *Gilmer* . . . we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue . . . expressly permitted collective actions."). Turning to the ADEA's legislative history, the Supreme Court found nothing showing a

congressional intention to preclude waiver of a judicial forum. *Gilmer*, 500 U.S. at 29. Indeed, the Court found in the ADEA a "flexible approach to resolution of claims" and other indicia that Congress did not intend to preclude individual arbitration of disputes. *Id*. at 29–31.

Finally, in *Italian Colors*, there was a purported "inherent conflict," *Gilmer*, 500 U.S. at 26, between arbitration and the policies underlying the Sherman and Clayton Acts, 133 S. Ct. at 2310–12. According to plaintiffs, the cost of individually arbitrating their antitrust claims would so far exceed the potential recovery that requiring them to litigate their claims individually would render the plaintiffs unable to vindicate their federal statutory rights. *Id.* The Supreme Court rejected this argument. Examining the text of the acts, the Court noted that the federal acts "make no mention of class actions," and were "enacted decades before the advent of Federal Rule of Civil Procedure 23." *Id.* at 2309. The Court gave even less weight to the plaintiffs' policy arguments. With respect to the argument that "federal law secures a nonwaivable *opportunity* to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration," the Court simply stated that "we have already rejected that proposition" in *Concepcion. Id.* at 2310. In *Concepcion*, the Court made clear that the FAA allows parties to waive the use of a class mechanism because such a mechanism "interferes with fundamental attributes of arbitration." 563 U.S. at 344.

In sum, the Supreme Court consistently rejects claims that a "contrary congressional command" precludes courts from enforcing arbitration agreements according to their terms, including when such agreements waive the use of class mechanisms. In analyzing such arguments, the Court has

focused primarily on a single question: whether the text of the federal statute at issue expressly precludes the use of a predispute arbitration agreement for the underlying claims at issue. If the statute does not, the Court's "healthy regard for the federal policy favoring arbitration," *Moses H. Cone*, 460 U.S. at 24, leads it to conclude that there is no such contrary command, and the Court reads the purportedly contrary federal statute to allow the enforcement of the agreement to arbitrate. The Court has likewise rejected claims that the legislative history or policy of the federal statute requires a different result. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89–90 (2000) (noting that the Court has "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989))).

III

Here, the majority ignores the thrust of Supreme Court precedent and declares that arbitration is precluded because it interferes with a substantive right protected by § 7 and § 8 of the NLRA.[4] Section 7 states:

---

[4] Although the majority cites *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), it does not defer to the NLRB's interpretation of § 7 as overriding the command of the FAA in *In re D.R. Horton v. NLRB*, 357 NLRB No. 184 (2012), which was subsequently overruled by the Fifth Circuit. *See D.R. Horton v. NLRB*, 737 F.3d 344 (5th Cir. 2013). Rather, the majority states that "the NLRA is unambiguous, and there is no need to proceed to the second step of *Chevron*." Maj. Op. at 13.

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

29 U.S.C. § 157. Section 8 merely makes it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]." 29 U.S.C. § 158(a).

## A

Nothing in this language comes remotely close to the examples of contrary congressional commands the Supreme Court identified in *CompuCredit*, where Congress expressly stated that "[n]o predispute arbitration agreement shall be valid or enforceable." 132 S. Ct. at 672. The language of § 7 and § 8 of the NLRA neither mention arbitration nor specify the right to take legal action at all, whether individually or collectively. *See Italian Colors*, 133 S. Ct. at 2309 ("The Sherman and Clayton Acts make no mention of class actions."). Applying Supreme Court precedent, we must conclude there is no "contrary congressional command" in the text of the NLRA.

Moreover, contrary to the majority, Maj. Op. at 6, nothing in either § 7 or § 8 creates a substantive right to the availability of class-wide claims that might be contrary to the FAA's mandate. While the NLRA protects concerted activity, it does not give employees an unwaivable right to proceed as a group to arbitrate or litigate disputes. Rather, as

in *CompuCredit* and *Gilmer*, the language can be harmonized with enforcement of an arbitration agreement that waives class action mechanisms.  According to a dictionary roughly contemporaneous with the passage of the NLRA, "concerted" action is action that is "mutually contrived or planned: agreed on."    Webster's International Dictionary of the English Language 295 (1903 ed.).  A natural reading of § 7's right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" enables employees to jointly arrange, plan, and carry out group efforts to dispute employer positions.   In a legal context, this could include joint legal strategies, shared arguments and resources, hiring the same attorneys, or even requesting the Department of Labor to bring an independent action against the employer.   But the language does not expressly preserve any right for employees to use a specific *procedural* mechanism to litigate or arbitrate disputes collectively; even less does it create an unwaivable right to such mechanism.  Indeed, the text provides no basis for the majority's conclusion that § 7 gives employees a substantive, unwaivable right to use Rule 23, § 216(b) of the FLSA, or any other procedural mechanism that might be available for bringing class-wide actions.[5]   Accordingly, the Supreme Court's precedent compels the conclusion that neither § 7 nor § 8 contains a "contrary congressional command" that precludes enforcing Morris's arbitration agreement according to its terms.  If this were not the case, the Court's statement

---

[5] The majority claims that *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978), conclusively supports its view that § 7 of the NLRA includes a substantive right to class action procedures.  Maj. Op. at 10–11 n.3.  This is incorrect.  The Court declined to delineate the rights that are provided by § 7 in an administrative or judicial forum, stating: "We do not address here the question of what may constitute 'concerted' activities in this context."  *Eastex, Inc.*, 437 U.S. at 566 n.15.

that *Gilmer* "had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions," *Italian Colors*, 133 S. Ct. at 2311, would be meaningless. Under the majority's reasoning, regardless whether a class action waiver survives express language in the ADEA, as *Gilmer* held, the waiver nevertheless is unenforceable in every action by an employee against an employer due to the unwaivable right to class procedures in the NLRA.

Nor does the legislative history of the NLRA demonstrate an intent to preclude individual resolution of disputes. The NLRA was enacted decades before Rule 23 created the modern class action in 1966. As the Fifth Circuit observed, in enacting the NLRA "Congress did not discuss the right to file class or consolidated claims against employers," and therefore "the legislative history also does not provide a basis for a congressional command to override the FAA." *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 361 (5th Cir. 2013). The majority does not cite any legislative history to the contrary.

Finally, there is no "inherent conflict between arbitration" and the "underlying purposes" of the NLRA. *Gilmer*, 500 U.S. at 26. The majority argues that the very purpose of the NLRA is to enable employees to engage in concerted activity, and therefore, it necessarily also has the purpose of enabling employees to engage in collective legal activity, including class actions. Maj. Op. at 9–10. Even assuming that concerted action is "the basic tenet of federal labor policy," *id.* at 10, nothing in the NLRA suggests that this protection includes the right to resolve disputes using a particular legal procedure. The majority's attempt to equate a substantive right to concerted action with a legal procedural

mechanism for resolving disputes has no basis in history or Supreme Court precedent. To the contrary, the Court has held that "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). Moreover, as the Fifth Circuit pointed out, there is "limited force to the argument that there is an inherent conflict between the FAA and NLRA when the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted." *D.R. Horton*, 737 F.3d at 362. Indeed, as the majority acknowledges, "federal labor policy *favors* and promotes arbitration." Maj. Op. at 16 (emphasis added). *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960) ("[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."); *Pyett*, 556 U.S. at 257 ("Parties generally favor arbitration precisely because of the economics of dispute resolution.").

In sum, nothing in the text, legislative history, or purposes of § 7 precludes enforcement of an arbitration agreement containing a class action waiver.

B

In order to avoid this conclusion, the majority disregards the Supreme Court's guidance, and instead conflates the question whether "the FAA's mandate has been overridden by a contrary congressional command," *CompuCredit*, 132 S. Ct. at 669 (internal quotation marks omitted), with the question whether an employee's agreement to arbitrate individually is invalid under the FAA's savings clause, 9 U.S.C. § 2 (providing that an agreement to arbitrate "shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). The majority reasons that: (1) the "Separate Proceedings" requirement in Morris's contract that all disputes must be resolved individually is illegal because it violates the NLRA; (2) a party may raise a defense that a contract provision is illegal, and such a defense is generally applicable and not related specifically to arbitration agreements; and therefore (3) in response to Ernst & Young's motion to compel arbitration, Morris's defense that the "Separate Proceedings" requirement is illegal is preserved by the FAA's savings clause. In adopting this line of reasoning, the majority joins the Seventh Circuit (the only circuit with which the majority agrees). *See Lewis v. Epic Sys. Corp.*, — F.3d — , 2016 WL 3029464 (7th Cir. 2016) (holding that § 7 of the NLRA mandates collective legal action for employees, and therefore an arbitration agreement waiving such collective legal action is "illegal" and thus unenforceable under the FAA's savings clause.)

This reasoning is contrary to the Supreme Court's FAA jurisprudence. Maj. Op. at 14–17. First, the Supreme Court does not apply the savings clause to federal statutes; rather, it considers whether Congress has exercised its authority to override the FAA's mandate to enforce arbitration agreements according to their terms. *See CompuCredit*, 132 S. Ct. at 669. If there is no "contrary congressional command," i.e., an express statement such as "[n]o predispute arbitration agreement shall be valid or enforceable," *id.*, then the Supreme Court will conclude that the federal statute at issue can be harmonized with the FAA. Second, the majority's reasoning is specious because it is based on the erroneous assumption that the waiver of the right to use a collective mechanism in arbitration or litigation is "illegal."

But such a waiver would be illegal only if it were precluded by a "contrary congressional command" in the NLRA, and here there is no such command.

Moreover, even if the FAA's savings clause were applicable to a federal statute, the majority's construction of § 7 and § 8 of the NLRA as giving employees a substantive, nonwaivable right to classwide actions would not be saved under that clause.  As *Concepcion* explained, such a purported right would disproportionately and negatively impact arbitration agreements by requiring procedures that "interfere[] with fundamental attributes of arbitration." *Concepcion*, 563 U.S. at 344.  Because class procedures are generally "incompatible with arbitration," *id.* at 351, and "nothing in [the FAA's savings clause] suggests an intent to preserve [defenses] that stand as an obstacle to the accomplishment of the FAA's objectives," such rules do not fall within the confines of the savings clause, *id.* at 343.  The majority's argument that the nonwaivable right to class-wide procedures it has discerned in § 7 applies equally to arbitration and litigation and so is saved by the § 2 savings clause, Maj. Op. at 16–17, was expressly rejected in *Concepcion*, *see* 563 U.S. at 338 (rejecting plaintiffs' argument that a state rule prohibiting class action waivers in adhesion contracts applied equally to judicial and arbitral proceedings and thus fit the § 2 savings clause).

The majority's erroneous reasoning leads to a result that is directly contrary to Congress's goals in enacting the FAA. Given that lawyers are unlikely to arbitrate on behalf of individuals when they can represent a class, *see id*., 563 U.S. at 347, and an arbitrator cannot hear a class arbitration unless such a proceeding is explicitly provided for by agreement, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662,

684 (2010), the employee's purported nonwaivable right to class-wide procedures virtually guarantees that a broad swath of workplace claims will be litigated, *Concepcion*, 563 U.S. at 347. The majority's reasoning is likewise contrary to the Supreme Court's ruling that collective actions are not necessary to protect employees' federal statutory rights. *See Gilmer*, 500 U.S. at 32; *see also Circuit City Stores, Inc. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context.").

IV

The Second, Fifth, and Eight Circuits have concluded that the NLRA does not invalidate collective action waivers in arbitration agreements. *See Cellular Sales of Missouri, LLC v. NLRB*, — F.3d — , 2016 WL 3093363, at \*2 (8th Cir. 2016); *D.R. Horton*, 737 F.3d at 362; *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013). These decisions are consistent with Supreme Court precedent, which has made it abundantly clear that arbitration agreements must be enforced according to their terms unless Congress has given an express contrary command.

In teasing out of the NLRA a "mandate" that prevents the enforcement of Morris's arbitration agreement, the majority exhibits the very hostility to arbitration that the FAA was passed to counteract. The Court recognized in *Concepcion* that the pre-FAA judicial antagonism to arbitration agreements "manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy." 563 U.S. at 342 (quoting *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 406 (2d Cir. 1959)). Today the

majority invents a new such formula. Because I would follow the Supreme Court precedent and join the majority of the circuits concluding that § 7 of the NLRA does not prevent the collective action waiver at issue here, I would hold that Morris's contract must be enforced according to its terms. I therefore dissent.